Paul Sharman, Plaintiff Appellant Wanda Crowder, Plaintiff Appellant Paul Sharman, Plaintiff Appellant Wanda Crowder, the ex-wife of a former participant in an ERISA retirement plan sponsored by Delta and administered in part by Fidelity. Your Honors, the District Court improperly dismissed Ms. Crowder's ERISA claims against Delta and Fidelity for two reasons. First, while Ms. Crowder, by operation of law, automatically became the beneficiary under the plan upon her marriage to Mr. Crowder, nothing in the plan, nor in ERISA, or the Internal Revenue Code automatically divested her of that designation upon their divorce. Second, Ms. Crowder alleged sufficient facts to state a viable claim for breach of fiduciary duty against both Delta and Fidelity, and the District Court did not hold differently. In fact, it did not even address the claim in its order. The relevant facts... A preliminary question, if I could. Sure. The interpretation of the plan in this case is governed by federal common law trying to interpret ERISA. Is that correct? Yes. Are there any cases, either way, addressing whether or not an incorrect and premature designation, like the one in this case, is revived or not revived after a divorce? Well, Your Honor, in the Kennedy case, for example, there was... It's not quite exactly on point in terms of the facts, but it's a similar situation. Under Kennedy, the prior spouse lost all rights under the plan upon divorce, according to a lower court, but the Supreme Court held that the planned documents rule precluded a spouse's waiver of benefits from divesting her beneficiary designation. So, similar to here, the spouse had waived benefits in a state law divorce decree, but the Supreme Court said that that did not divest her beneficiary designation. Does that answer your question? Yes. I mean, I've done a fair amount of research in this case, and there are a lot of state statutes that try to deal with this particular circumstance, where a spouse has to agree to be divested of beneficiary status, and what happens when there's a divorce or a death or some other life event which affects that waiver or lack of waiver, but I really wasn't able to find anything on the federal side. Yes, there are a lot of state statutes and also plans also include automatic revocation language, but this plan did not. Mr. Crowder was married only once to Mrs. Crowder, and prior to their marriage, he did not designate a beneficiary under the plan, and he didn't do so when he married Mrs. Crowder, but prior to the divorce, he attempted to designate his sister as his beneficiary. Mrs. Crowder did not consent to the change in this designation, and Mr. Crowder then took no steps after the divorce was final to ratify the attempted prior designation of his sister as beneficiary. There were about 16 months between the divorce being final and his death, including whatever open enrollment periods that included, and he did not take any steps to ratify that designation of his sister. This is Judge Hull. I wanted to clarify one fact. He never did a written beneficiary for his spouse. Her rights, to the extent she's trying to exert rights, are only because the beneficiary will automatically be the beneficiary unless she waives during the marriage. There was never a beneficiary designation of her. Some people actually write one and say you're the beneficiary. He never did that for her. It was just an automatic spouse-gets-it rule, right? Correct. All right. In the language, what I need you to deal with in the plan, they tell him that during the marriage, well, the marriage ended. So help me with why I don't even know I have to get to that form he changed or whatever. Forget about what he did for the sister before he died, whether that survives anywhere. Help me with just a simple threshold, after St. Tony Wright came through that plan language or during the marriage, he dies. They've already divorced. At the time of death, they're not married. Correct. Why doesn't that solve the case? Well, I think that's the issue at the heart of the case, Your Honor. I think that's what you've identified. It's our reading of the plan document that during such marriage, as it's written in the plan, then goes on to address how he could change his beneficiary during the marriage. So it states that unless the participant waives the spouse of designation and indicates another person on a form satisfactory to the committee and the spouse gives written consent, the spouse is the beneficiary during the marriage. Now, following the marriage, this plan is silent as to any kind of revocation of that right after the marriage. There's no separate term in the plan for a beneficiary and a beneficiary by marriage or something along those lines. So a beneficiary is a beneficiary according to the plan. And in fact, for some further clarification... During the marriage, but at the time she's making a claim, she's not a beneficiary under the automatic spouse. Well, she became a beneficiary... Then that other person would have the benefit of the automatic spousal role. If he had remarried, the new spouse would have become the beneficiary by operation of law and her status, my client's status would have been... And that's because there was no longer... The first spouse was no longer the spouse during the marriage. I don't know how it matters here when everybody agrees they were divorced. Well, without remarriage or a quadro or a designation of a different beneficiary, she remained the beneficiary. We can't obviously get into the intent of the deceased, but we don't know what... So we get down to how we construe that plain language during the marriage, whether her rights... Isn't that what we get down to? How do we construe that language? Yes, and as... And then tell me why the plan construed it was wrong or arbitrary and capricious. Well, as Judge Jordan mentioned, many states have automatic revocation language. And as I mentioned, plans also put automatic revocation language. There's no such language in here that automatically revokes her status as beneficiary upon the divorce. So it's beholden upon the plan participant to make that change. In fact, he attempted to make a change prior to divorce being final, but that change wasn't valid. And then he never ratified that change following the divorce. So she remained the beneficiary. In fact, when... I don't want to get into Georgia law. This is Georgia, right? Well, this is going to be preempted by ERISA, so... Right, right. But they were married in Georgia, right? Yes, yes. Okay. But typically, to get after divorce in Georgia, you went to state law, you'd have to have a quadro. Otherwise, you'd have no rights. And she admits she doesn't have a quadro, right? I mean, she's supposed to... Right, there is no quadro, correct. Yeah, so he can change his beneficiary after the divorce. Anyway, I think you've answered my question. And just to clarify, the summary plan description, which ERISA also requires to summarize the plan in sort of plain English for the participants, it states, if you are married, your spouse is automatically your beneficiary. It's important to keep your beneficiary information current. Events such as divorce may create a need to change your beneficiary designation. Now, I'm not sure why that would be in the SPD if the plan automatically revoked her right as a beneficiary. Our contention is that the phrase during the marriage, as used in Section 14.03 of the plan, served two purposes. And first, it refers to the automatic spousal designation required by ERISA, as we've discussed. And second, it puts an express limitation on a participant's ability to take away that automatic designation during the marriage without the spouse's written consent. So that incorporates the anti-alienation requirements of ERISA. And to the extent that it the phrase is ambiguous. All right, Mr. Sharma, let me ask you another question to follow up on Judge Hull's inquiry. Yes, Your Honor. If Mr. Crowder had not attempted a change of beneficiary at all, he had just not filled out anything during his life, he's divorced from your client, and then he dies 10 years later. Who's the beneficiary? Well, Your Honor, under the plan, she would still be the beneficiary. How? How do you get there? Because he never changed his beneficiary. And there was no beneficiary except by operation of law during the marriage. So once the marriage ends, who's the beneficiary if none has been actually designated as Judge Hull indicated? Without any change of beneficiary, my client would still be the beneficiary because the plan... The client as opposed to his estate. Why wouldn't his estate then be the beneficiary and whoever came under the law... Well, the plan doesn't state that her rights are revoked upon divorce. Now, they could have put a provision like that on the plan and the many plans do include that provision, but they did not. Another point I'd like to make also is that when Mr. Crowder passed away a few months later, there was a call. We received this information from Fidelity. There was a call log. There was a call by one of Mr. Crowder's relatives to Fidelity. And the notes in the call log list Mrs. Crowder, the ex-wife as the beneficiary still as of that date. So Fidelity who were administering the benefits for the plan listed Ms. Crowder still as the beneficiary. This is four months after Mr. Crowder passed away. And then they made some decision based on receiving the divorce decree, which I'm not even sure would have any relevance because that's a state divorce decree. They made the decision to pay the sister the benefits instead of Ms. Crowder. Now, perhaps they should have... There's an undertone in this case that the reason we don't have the divorce decree is it's not only a quadro that would preserve her rights. It actually says she waives her rights. Well, the divorce decree is in the pleadings. We're not hiding anything. Maybe it's a settlement. It's a settlement of the case. It's a settlement agreement that's not in the pleadings. There's an undertone that in the settlement agreement she's actually waived her rights. I don't think it's in the record. Is a settlement agreement in the record? I don't recall if it's in the record or not, but there may very well be a waiver of rights, sort of a standard line that's in a lot of these divorce decrees. But again, that's going to apply under state law and not under federal. I'm just curious. Waiver of rights to what? To retire a client? Yeah. I don't recall exactly. I'd have to look. I can let you know during my rebuttal if I find anything regarding that. But I'm not sure how that has any relevance given that that's a state law issue, the divorce. And this is a federal arrest that which preempts state law. Well, we look to the divorce decree to see that she's no longer the automatic spouse beneficiary. Well, I mean, I understand that. I mean, I think the issue really comes down to whether she is still a beneficiary at the time Mr. Crowder passes away. And it's our contention that she is. And if there's any, to the extent there's any ambiguity there, that's construed against Delta who drafted the plan. So I just didn't quite get to the breach of fiduciary duty claims, but I just want to point out that she is able to maintain both a claim for benefits and a claim for breach of fiduciary duty, at least at the pleading stage under ERISA. What's the breach of fiduciary claim based on? Oh, it's based on the fact that fidelity, the claim against fidelity is that fidelity exercise discretion to deny her claim and pay benefits to a different beneficiary, even though the plan required that they be paid to her. But that's a benefits claim. That's not a breach of fiduciary claim, breach of fiduciary duty claim. Well, it is in the sense that fidelity exercised their fiduciary duty and breached it in their decision to pay benefits to somebody else. But all ERISA plan administrators do that, exercise their fiduciary duty. Correct. If you were right, you'd be able to convert every benefits claim under ERISA into a breach of fiduciary duty claim. Well, what I'm saying is by not following the terms of the plan, they were liable for equitable relief to her under the breach of fiduciary duty. Well, if you decide there's no, she's not the beneficiary, then that takes care of that claim. Is that correct? Most likely, yes, Your Honor. I mean, because they had no duty to her, she's not a beneficiary. Well, she had a colorable claim as a beneficiary. So I would argue that even there, she still potentially would have a claim for breach of fiduciary duty. But you're right, it does make it more difficult. I don't see why it's not ipso facto. If she does not have a claim as a beneficiary, so she's like not covered by the plan, how can they have a breach of a fiduciary duty to a third party who has no right to the plan? Well, if she, if, for example, if the court determined that the divorce automatically revoked her spousal beneficiary designation, she wouldn't have a viable claim for benefits. But in the Verity case, the Supreme Court held that she could still, you know, where a plan participant has no remedy under that section of ERISA, they can still assert a claim for breach of fiduciary duty under 50283. But if she has no right under the plan, they have no duty to her, the fiduciary has no duty to her. Well, I guess I would argue that she still has a colorable claim as a potential beneficiary, or was a beneficiary. Thank you so much. Thank you, Your Honor. Thank you very much, Mr. Sharman. Mr. McDonald. May it please the court, this is Tim McDonald. I'm counsel for all appellees. I thank the court for giving us the opportunity to present argument on this matter this morning. I'm going to go through a brief opening and then I'm going to directly address the points from the questions of Judge Hall and Judge Jordan before continuing my argument. Under the terms of the Delta Family Care Savings Plan, and I'm quoting from section 14.03 of the plan, if the participant is married, then during such marriage, the participant spouse shall automatically be the beneficiary. That's the end of the quote. There is no other time the spouse is automatically the beneficiary under the terms of the plan, or the Employee Retirement Income Security Act, which I'll refer to hereafter as ERISA. The key words in that provision, as identified by the questions by the panel are, quote, is married, close quote, quote, during, close quote. And in light of the emphasis in Wanda Crowder's reply brief, quote, automatically, close quote. The plan does not say is or ever was married. But Wanda Crowder says is means is or ever was. The plan does not say during and after such marriage. But Wanda Crowder argues that the plan says that during means, quote, during and after, close quote. This is Judge Jordan. Let me ask you the same question I asked Mr. Sharman from a different perspective. His beneficiary designation during his marriage to Ms. Crowder was ineffective during the marriage, right? During the marriage, it was ineffective. Yes. Right. Okay. Are there any cases anywhere talking about whether or not a designation that is ineffective when made gets revived upon divorce or death? I am not aware of any, Your Honor. If I may, we, this case never gets to that question. And second, although there are no cases, the background principles of ERISA would say that that's a determination for the plan to make. Here's the answer in long form. While there are no cases on it, as Judge Hull identified in her questions, even if there was never a card, or even if there's a card that's void, or even if there's a card that's voidable, you still end up with the benefit not going to Wanda Crowder, but instead to the personal representative of the estate who is someone else as plaintiff pled in the original complaint. So if you go to page 23 of our brief and look at the way that we've laid out that one provision where they add some words to it, or if you look at in the record, it's document number 19-1, and the particular page, the ECF page is page 76. You will see that you do not get to, or if you do not have a marriage exception, you end up going to the personal representative. And so in that sense, at a plan level, we wouldn't get there. Now, walking back to the background principles under federal law, ERISA is basically set up to allow plans to be structured however they want, so long as they do not contravene the restrictions in ERISA. There is no written restriction that says that such a beneficiary designation has to be void or voidable. The plan is free to construct it however it wants, so long as it abides by the provisions of the Internal Revenue Code if it does not have a marriage exception. But because it has a marriage exception, it's not subject to those provisions. Now, let me make one other point here, Judge Jordan, based on the argument that is throughout Mr. Sharman's argument, that there's another way they could have done it. That's a non sequitur. The mere fact that there are two ways you could do something does not mean that the first way is incorrect. For example, I could make the statement, I am presenting an argument before three United States circuit judges. That's true and accurate. I could also make the statement, there are three United States circuit judges who are on the panel in front of which I'm making argument. It's a different sentence. It gets you to the exact same place. The language here gets you to the exact same place that a revocation language would if you wrote it differently. I'll note also that the language in this plan is very similar to the language in the Supreme Court's decision in Kennedy. And so there's no revocation language in that case either. And there's no duty for a plan to write it in the way that Mr. Sharman would prefer that they write it. So to go back to the point on how you work through section 14.03, once there is a divorce, the former spouse loses the automatic beneficiary status. It's really important that we focus on a word that is ignored by Wanda Crowder, and that is automatic. The first sentence of 14.03 in the plan talks about how you affirmatively designate somebody. And then the exception is only there automatically. And it defines two ways, the same limitation, if the participant is married during such marriage. Arguably, you could eliminate one of those portions of the marriage exception, you'd still get to the same place, because each means the same thing. Again, our red brief, or our appellee's brief at 23 shows that to read the exception the way Mr. Sharman would, you need to eliminate one word, that is is, and add 19 words to the provision. I'm unaware of any authority that says that the way to read an ERISA plan is to add 19 words to it and delete one. Instead, what this court and other courts routinely do is simply work through the language of the plan and apply it as written. Now, with respect to the legal requirements, there is no requirement that this plan word this provision one way or another, as I've said before. So then the question becomes, is there anything in that sentence primarily, section 14.03, which would indicate that it's de novo wrong. And there really isn't anything that would indicate that it's de novo wrong. As a matter of fact, I'm not sure that if that draft were presented to me, I would tinker with it. Because of the clarity of that provision. Mr. Sharman made the point that if you go on, that marriage exception, then has basically an exception to it. And that is that the spouse could always agree to waive it. That's true. But the fact that there's a further exception doesn't mean that is does not mean is in participant is married, or that during such marriage does not mean during or after such marriage. It's just another provision in the plan that doesn't contradict it at all. The McDonald one more one more question from my end, what is the provision of the plan that has the default provision about where the benefits go if there's no beneficiary in any way, shape or form? Yes, Your Honor, they're all combined in section 14.03. And that can be found in the record at 19 dash one, ECF page 76. No, I know where 1403 is, but there's no other separate provision that relates to it, or it's cross reference. It's all in 1403. Yes, Your Honor. Okay, thank you. Thank you. McDonald, Judge Toflat. Your argument is, is that the spouses status changed as beneficiary when the divorce was entered, right? Yes, at that point, she was no longer. No longer. All right. Right. Let's suppose the estate filed a suit and said, you shouldn't have paid it to the sister. If he died without a beneficiary designation, it would go to his estate. Isn't that right? If it were found that there was no beneficiary? No, if he made no change of beneficiary after the divorce, under your theory, she disappears after the divorce. He has no beneficiaries, do you agree, except his estate. In this case, the plan... No, no, not this case. Hypothetical. Okay. The husband changes the beneficiary during the divorce to the sister. Right. I think it would depend... As long as he's still married before the divorce becomes final, she's the beneficiary, do you agree? She's the beneficiary as long as there's no divorce. She is, she being the sister or the wife? I'm sorry. No, no, no. The wife is the beneficiary as long as there's no divorce. Correct. All right. Your argument is once there's a divorce, her rights evaporate. Unless she also happens to be the beneficiary designated on the card, yes. No, no. She's not designated on the card. It evaporates. Yes. Okay. Now the estate makes a claim and its claim is the sister's designation is invalid. Was invalid when made and still is, and the estate is entitled to the proceeds. What do you say about that? I say that there's no background rule in ERISA that automatically invalidates such a designation, so it would be left to the plan terms. Under the first sentence in section 14.03, there is no, in this plan, there is no limitation on when the beneficiary designation needs to be made, except that it must be made and submitted on an appropriate form to fidelity before the death of the participant. So as a result, this plan could have been written differently. It could have said, we will not accept any beneficiary designations during any marriage. Well, you will agree that the estate has a pretty good argument though. The estate would have an argument. I think under the terms of this plan, the beneficiary would win. I also believe that you could write a plan that would favor the estate over such a beneficiary if you wanted to. It's a plan drafter's decision under ERISA. This is Judge Hall, but given we don't have any claim except for the ex-wife's claim, all we have to decide here is does she have a claim? That we don't need to deal with all those other issues about the premature designation of the um purported or proper beneficiary of the estate or the sister. All we have to decide is the ex-wife is not the proper beneficiary. Is that all we have to do? Correct. And as a small point, Your Honor, at the beginning of this case, the representative was named as a defendant and never asserted a right to the benefit. Instead, was sued by WANDA and resisted the claim. That was a motion brought on the original complaint. Whether he did that or not, he may have had his own interest. That doesn't tell me anything. What I need to know is what I have to decide. And the only thing I have to decide is does the plaintiff here have a claim? Is that correct? And we don't have to deal with anything else? Yes, Your Honor. I mean, that can be a very narrow issue. It is a very narrow issue, Your Honor, and very plan-specific. Mr. McDonald, thank you so much. We appreciate it. Thank you. Okay, Mr. Sharman, you've got your rebuttal left. Thank you, Your Honors. Just briefly, as Mr. McDonald stated, there's no revocation language in this plan, just like in the Kennedy case. And just to make another point, we did not claim that any language should be inserted into Section 14.03 to agree with our reading of the plan. The phrase, during such marriage, modifies the beneficiary to the extent that the participant has to waive the spousal designation and the spouse has to give written consent to the waiver. That's what the end of that sentence states. So that's why during such marriage is in there. It's basically saying during the marriage, you can't give away your beneficiary rights unless your spouse consents. After the marriage, you can do whatever you want, but it doesn't change the beneficiary. There's no automatic revocation. And to the extent that they disagree, the fact that the SPD says otherwise gives rise to a claim for breach of fiduciary duty under AMARA. And also, the federal common law of ERISA recognizes the substantial compliance doctrine. And Mr. Crowder did not substantially comply by changing his beneficiary to the sister following the divorce. So it's our contention that Mr. Crowder is the correct beneficiary. And we ask that this court reverse the lower court and remand the case consistent with that request. Thank you, Your Honor. All right. Thank you both very much. It's been helpful. We are in recess until tomorrow morning. Thank you. Thank you.